**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARIELLE TREY SMITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-1059-D** |
| | ) | |
| **STEVEN HARPE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner appearing *pro se*, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from a state court conviction. (ECF No. 1). Mr. Harpe has filed his Response to Petition for Writ of Habeas. (ECF No. 13). For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I.   FACTUAL BACKGROUND

The Oklahoma Court of Criminal Appeals (OCCA) provided the following factual background regarding the events which led to the death of Jared Holmes and the subsequent conviction of Petitioner. These facts are presumed correct under 28 U.S.C. § 2254(e)(1).

> There was no dispute at trial that Smith shot and killed Jared Holmes on August 20, 2017 in the Altus, Oklahoma home of Melisha Torres. Smith's companion, Ryan Fields, witnessed the shooting and testified for the prosecution and Smith confessed. Fields explained that Torres had arranged a drug deal between Smith and Holmes and that she accompanied Smith to Torres's house to sell Holmes half a pound of marijuana. When Smith and Fields arrived in Altus, Smith spoke on the phone to Torres, who said she was not in town, which annoyed Smith who understood the plan was for her to be home. Torres, per Smith's instructions, notified Holmes that Smith

was at her house. According to Fields, Smith was rolling a "blunt" when Holmes arrived a short time later and Smith asked Holmes if he wanted to smoke it. Holmes declined and Smith asked if Holmes had been making disparaging remarks about him. Disbelieving his denials, Smith pointed a gun at Holmes and told him to remove his pants and to get on the floor. Holmes complied. When Smith turned away, Fields said Holmes jumped up and Smith shot him in the leg and again in the neck as he stumbled toward Smith. Fields admitted lying to police when she said during police interviews that Smith acted in self-defense. She claimed she lied because she was afraid of Smith. She maintained at trial that Holmes was unarmed. Smith told detectives after his arrest, as well as testified at trial, that he shot Holmes in self-defense. He claimed Holmes pointed a gun at him first and tried to rob him. Only when Holmes was distracted by Fields's screams did he grab his gun and shoot Holmes.

That Smith disposed of Holmes's body was also undisputed. After the shooting, Smith enlisted Fields's and Marquis Johnson's aid in cleaning up the scene and getting rid of Holmes's body and car. They dumped Holmes's body in a rural creek near Frederick, Oklahoma where a passerby discovered it. They went to Smith's grandmother's vacant house in Frederick and burned evidence of the fatal shooting. Later, Fields took Holmes's car and hid it at the home of one of Smith's family friends.

(ECF No. 13-1:3-5) (footnotes omitted).

## II.   PROCEDURAL BACKGROUND

Shortly following Mr. Holmes' death, Petitioner was charged with second-degree murder in Jackson County District Court Case No. CF-2017-184. Original Record, *State v. Smith*, Case No. CF-2017-184 (Jackson Co. Dist. Ct.) 1 (O.R.). Subsequently, the Information was amended to reflect charges of: (1) first-degree felony murder and (2) the unlawful removal of a dead body. (O.R. 18). Although first-degree murder requires the State to prove an element of "malice aforethought," first-degree felony murder does not, so long as the State can prove that the murder occurred during the commission of a certain enumerated felony. *See* 21 O.S. § 701.7(A) & (B). In Mr. Smith's case, the State

presented two underlying felonies to support the murder charge: (1) conspiracy to distribute a controlled dangerous substance (marijuana) and (2) conspiracy to commit robbery with a dangerous weapon. (O.R. 18). Ultimately, the jury convicted Petitioner of first-degree felony murder with the underlying felony being robbery with a dangerous weapon. (O.R. 165).

On September 16, 2021, the OCCA affirmed Mr. Smith's conviction, following his direct appeal. (ECF No. 13-1). On December 14, 2022, Mr. Smith filed a habeas Petition in this Court, alleging:

- Inadmissible hearsay in the form of a statement made by Melisha Torres to Detective Tommy Uptergrove violated the Sixth and Fourteenth Amendments;

- Insufficient evidence to support the conviction;

- Inadmissible hearsay in the form of statements made by co-conspirator Melisha Torres to Detective Almanza which was thereafter included in probable cause affidavits violated the Sixth and Fourteenth Amendments;

- Improper admission of allegedly prejudicial testimony;

- A violation of Due Process owing to the trial court's failure to instruct the jury that witness Ryan Fields was Petitioner's accomplice;

- Prosecutorial misconduct;

- Jury Bias; and

- Ineffective Assistance of Counsel.

(ECF No. 1).

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") governs this Court's power to grant habeas corpus relief. Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Coddington v. Sharp*, 959 F.3d 947, 952 (10th Cir. 2020).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

For claims adjudicated on the merits, "this [C]ourt may grant . . . habeas [relief] only if the [OCCA's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hanson v. Sherrod*, 797 F.3d 810, 814 (10th Cir. 2015) (citation omitted). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.' " *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly

established federal law, focusing exclusively on Supreme Court decisions." *Hanson*, 797 F.3d at 824. "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself." *Id.* (citation omitted).

The "unreasonable application" prong requires the petitioner to prove that the state court "identifie[d] the correct governing legal principle from [Supreme Court] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* (citation omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "there was no reasonable basis for the state court's determination." *Id.* at 1242-43 (citation omitted). "The question under AEDPA is not

whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 562 U.S. at 101–02. Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102.

Finally, a federal habeas court must "accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). In other words, when the state appellate court makes a factual finding, the Court presumes the determination to be correct; a petition can only rebut this presumption with clear and convincing evidence. *See id.* at 2199-22; *see also* 28 U.S.C. § 2254(e)(1).

If the state appellate court has not addressed the merits of a claim, the Court exercises its independent judgment. *See Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) ("For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'") (citation omitted). "And, even in the setting where we lack a state court merits determination, '[a]ny state-court findings

6

of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence.'" *Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (quoting 28 U.S.C. § 2254(e)(1)) (internal citation omitted).

## III.   GROUND ONE

In Ground One, Petitioner argues that the introduction of inadmissible hearsay violated Petitioner's Sixth Amendment right of Confrontation and his Fourteenth Amendment right to Due Process. (ECF No. 1:20-28). The Court should deny habeas relief on Ground One.

### A.   Background

On the second day of trial, the trial court held an in-camera hearing to assess whether statements from Melisha Torres and Ryan Fields, as told to Altus Police Detectives Tommy Uptergrove and Colby Earls, would be admissible as non-hearsay under 12 O.S. § 2801(B)(2)(e). Under that provision, a statement is not considered hearsay if: "[t]he statement is offered against a party and is . . . a statement made by a co-conspirator of a party during the court and in furtherance of the conspiracy."

At the hearing, Detective Uptergrove testified that in an August 25, 2017 interview with Ms. Torres, she had told him:

- that Mr. Holmes was looking for a contact to buy marijuana from, and she—Ms. Torres—provided Petitioner's name to Mr. Holmes as a seller;

- three days before Mr. Holmes' death, Petitioner told her: "I want to rob that bitch ass nigga," referring to Mr. Holmes;

- on August 20, 2017, she gave Petitioner permission to break a window to gain entry to her house in order to meet Mr. Holmes there and complete

the drug deal because she was not home at that time; and

- that she knew that there was going to be a robbery at her house.

Jury Trial Volume II, *State of Oklahoma v. Smith*, Case No. CF-2017-184 (Jackson Co. Dist. Ct. Jan. 29, 2019) 5-7, 10 (Trial TR. Vol. II).

Detective Earls testified that during an interview with Ryan Fields, Petitioner's girlfriend at the time of the murder, she stated:

- on the night of August 20, 2017, she and Petitioner were going to Ms. Torres's house to "sell some weed;" and

- the drug deal between Petitioner and Mr. Holmes had been arranged by Ms. Torres.

*Id.* at 23-24.

Ultimately, the Court ruled that the State had met its burden to prove, by a preponderance of the evidence, that there was a conspiracy between Petitioner, Ms. Torres, and Ms. Fields, to commit the crime of distribution of marijuana. *Id.* at 41. Accordingly, the Court allowed the statements of co-conspirators Melisha Torres and Ryan Fields to be admitted at trial, pursuant to 12 O.S. § 2801(B)(2)(e).

### B.  Petitioner's Argument on Direct Appeal and the OCCA's Decision

As stated, Mr. Smith was charged with felony murder—based on two alternate underlying felonies—conspiracy to distribute marijuana *or* conspiracy to commit robbery with a dangerous weapon. *See supra*. Following the in-camera hearing, the trial court ruled that testimony from Ms. Torres would be admissible through third-party testimony from law enforcement officials under § 2801(B)(2)(e), as testimony of a co-conspirator, after finding that the State had met its burden in proving that a conspiracy had existed

between Ms. Torres, Ms. Fields, and Petitioner to distribute marijuana. *See supra.*

In Proposition One of his direct appeal brief, Mr. Smith argued that statements from Ms. Torres violated his: (1) Fourteenth Amendment right to Due Process and (2) his Sixth Amendment right to confront witnesses against him. (ECF No. 13-3:23-28). In support, Mr. Smith argued that testimony from Ms. Torres regarding the statement that he allegedly made to her—that he wanted to rob Mr. Holmes—was outside the scope of the trial court's ruling following the in-camera hearing—that the court's ruling was limited to allowing testimony related only to the conspiracy to distribute marijuana, not to the conspiracy to commit robbery. (ECF No. 13-3:24). In doing so, Petitioner argued that the evidence revealed that the conspiracy to distribute marijuana occurred between 7:00 p.m. and 8:00 p.m. on August 20, 2017, and that any evidence outside that time frame was considered inadmissible hearsay. (ECF No. 13-3:26-27).

Following this argument, Petitioner stated:

> The trial court's erroneous admission of Mr. Smith's alleged out-of-court statements to his non-testifying codefendant/accomplice through the testimony of third-party law enforcement witnesses deprived Mr. Smith of his fundamental right to confront and cross-examine the witnesses against him. Because these statements do not fall within any "firmly rooted exception to the hearsay rule," and otherwise lack adequate "indicia of reliability," their admission into evidence violated Mr. Smith's sixth amendment right to confront Ms. Torres.

(ECF No. 13-3:28).

In characterizing the Petitioner's claims, the OCCA stated: "Smith contends admission of Torres's statements through Detectives Uptergrove and Almanza denied him a fair trial and his right to confrontation." (ECF No. 13-1:5). Next, the Court recognized

the standard of review for admissibility of testimony as non-hearsay under §
2801(B)(2)(e) and stated that "the issue before [the Court] turn[ed] on whether Torres's
statements were made during the alleged conspiracy." (ECF No. 13-1:3). Finally, the
OCCA stated that it would "review the district court's evidentiary rulings for an abuse of
discretion and the alleged Confrontation Clause violation de novo." (ECF No. 13-1:6).

In its analysis, the OCCA characterized Mr. Smith's challenge as "mostly a vague
complaint about unspecified statements attributed to Torres with . . . one exception"—
that being Ms. Torres' statement to Detective Uptergrove that three days before Mr.
Holmes' death, Petitioner told Ms. Torres: "I want to rob that bitch ass nigga" (referring
to Mr. Holmes). *See* ECF No. 13-1:7-8, n. 4. As such, the OCCA limited its analysis to this
statement only, finding all others to have been waived. (ECF No. 13-1:8, n. 4).

After characterizing Petitioner's claims as alleging violations of both Due Process
and the Confrontation Clause, the OCCA proceeded to evaluate whether, in fact, Ms.
Torres' statement that Mr. Smith had told her he wanted to rob Mr. Holmes was "made
during the alleged conspiracy [to distribute marijuana]." *See supra*. In doing so, the OCCA
found that the record had failed to support Mr. Smith's theory regarding the duration of
the conspiracy timeline, but instead had actually supported a finding that: "the statement
attributed to Smith about robbing Holmes was made sometime between their introduction
to set up a drug sale and the date set for the actual sale, i.e.. August 20." (ECF No. 13-
1:9). In sum, the OCCA stated:

> Based on the timeline evidence, we find the district court did not err in
> finding the statement about robbing Holmes was made during the duration
> of the conspiracy to distribute drugs and admitting the statement as co-
> conspirator non-hearsay under Section 2801(B)(2)(e). This claim is denied.

(ECF No. 13-1:10).

### C.   Petitioner's Habeas Challenge and the Court's Standard of Review

In Ground One of the habeas Petition, Mr. Smith raises the argument that he had

raised in Proposition One on Direct Appeal, nearly repeating the argument verbatim. *See*

ECF No. 1:20-28. In addition, however, Petitioner provides the court with the habeas

standard of review under the AEDPA and also states:

> The OCCA's opinion was objectively unreasonable as its harmless error
> analysis under *Chapman v. California*, 386 U.S. 18 (1967) does not
> sufficiently resolves the error to determine it was harmless beyond a
> reasonable doubt. . . . The Court must apply the harmless-error standard
> enunciated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)[.]"

(ECF No. 1:21-22).

Mr. Smith correctly identified this Court's standard of review under the AEDPA

when the OCCA has adjudicated a claim on the merits. But Petitioner wrongly asserted

that the OCCA had unreasonably applied *Chapman v. California* to engage in a "harmless

error" review, when the Court did no such thing. *See supra*. Regardless, at this point, the

undersigned is tasked with determining this Court's standard of review, which, as stated,

depends upon how that claim was resolved by the OCCA. *See supra*.

Although the OCCA recognized that Mr. Smith had raised two constitutional

claims—violations of Due Process and the right of Confrontation, *see supra*, the OCCA

limited its analysis to the alleged violation of Due Process, without adjudicating the Sixth Amendment Confrontation claim.

In its opinion, the OCCA stated: (1) it would "review the district court's evidentiary rulings for an abuse of discretion" and (2) "the district court did not err in finding the statement about robbing Holmes was made during the duration of the conspiracy to distribute drugs[.]" (ECF No. 13-1:6, 10). The OCCA's ultimate finding, that the district court had not abused its discretion, constituted a "plain error" review by the OCCA. *See Eizember v. Trammell*, 803 F.3d 1129, 1138, n.1 (10th Cir. 2015). The Tenth Circuit Court of Appeals has held that "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). So, when the OCCA rejected Petitioner's claim under the abuse of discretion/plain-error standard, the decision "effectively disallowed the possibility of a due process violation." *Id.* at 1011. As a result, the undersigned finds that the OCCA adjudicated Mr. Smith's Due Process claim on the merits, and that claim is subject to a deferential review under the AEDPA.

Regarding the Confrontation claim, however, the undersigned reaches a different conclusion. Although the OCCA recognized the claim, and stated that it would be reviewed *de novo*, the Court's analysis ended with the finding that the trial court did not abuse its discretion in its evidentiary ruling. *See* ECF No. 13-1:10. In fact, following that conclusion, the OCCA stated: "This claim is denied." (ECF No. 13-1:10). The Court's use of the word "claim" (singular) instead of "claims" (plural) and the Court's failure to even cite the Sixth

Amendment or the Confrontation Clause, provides further evidence that the Court never evaluated the Confrontation claim. As a result, the undersigned will review Mr. Smith's Confrontation claim *de novo*. *See supra*.

### D.    The Due Process Claim

Based on the OCCA's adjudication of Petitioner's Due Process claim, this Court must defer to the OCCA's ruling unless it unreasonably applied the due process test. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005). The Court should answer this question in the negative.

As stated, the OCCA's review, and this Court's review, is limited to a discussion of whether the admission of Ms. Torres' statement that Petitioner had told her he had wanted to rob Mr. Holmes was properly admitted under 12 O.S. § 2801(B)(2)(e). As the OCCA noted, the record supports a finding that the conspiracy to distribute marijuana began several days prior to when the drug sale was supposed to occur. *See* ECF No. 13-1:9. At the in-camera hearing, Detective Uptergrove testified that Ms. Torres had told him that she was the person who introduced Mr. Smith and Mr. Holmes for the purpose of buying and selling drugs. (Trial TR. Vol. II 5). At the same hearing, Detective Earls testified that Ryan Fields had told him that Ms. Torres had told her that she—Ms. Torres—had set up Mr. Smith and Mr. Holmes to "do drug deals together." (Trial TR. Vol. II 34). And at trial, Mr. Smith himself testified that he met Mr. Holmes "[f]our to seven days" prior to August 20. Jury Trial Volume V, *State of Oklahoma v. Smith*, Case No. CF-2017-184 (Jackson Co. Dist. Ct. Feb. 1, 2019) 134 (Trial TR. Vol. V). This evidence supports

the OCCA's finding that the "there was a plan in motion among the members of the conspiracy to distribute marijuana days before the night Smith shot Holmes. . . [and] the statement attributed to Smith about robbing Holmes was made sometime between their introduction to set up a drug sale and the date set for the actual sale, i.e. August 20." (ECF No. 13-1:9). Under such circumstances, Petitioner cannot show the OCCA unreasonably applied federal law when it found the admission of the Ms. Torres' statement under § 2801(B)(2)(e) did not render his trial fundamentally unfair.

### E.    The Confrontation Clause Claim

Mr. Smith argues that the trial court's admission of the aforementioned statement from Ms. Smith deprived him of his Sixth Amendment right to confront witnesses against him. (ECF No. 1:27). As discussed, the OCCA failed to address this claim, rendering it subject to *de novo* review. The Court should reject Petitioner's argument and deny habeas relief on this claim.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). "Hearsay" is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). But "the Confrontation

Clause does not bar the admission of [non-hearsay] statements." *Williams v. Illinois*, 567 U.S. 50, 57, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012).

Petitioner's claim is predicated on the admission of Ms. Torres' statement, through the testimony of Detective Uptergrove, that Mr. Smith had told Ms. Torres that he intended to rob Mr. Holmes. The trial court admitted this statement as co-conspirator non-hearsay under 12 O.S. § 2801(B)(2)(e). *See supra*. As discussed, no error existed with the admission of such testimony, as the record clearly supports that the statement was made during and in the furtherance of the conspiracy to distribute marijuana. *See supra*. Because the statement was properly admitted under an exception to the hearsay rule, no violation of the Confrontation Clause existed. *See Martinez v. Sullivan*, 881 F.2d 921, 929 (10th Cir. 1989) ("Thus the admission of Lujan's out-of-court statements [as a co-conspirator] did not violate Martinez' rights under the Confrontation Clause."). Accordingly, the Court should deny habeas relief on this claim.

## IV.   GROUND TWO

In Ground Two, Mr. Smith challenges the sufficiency of the evidence to support the conviction. *See* ECF No. 1:28-33. According to Petitioner, the State failed to prove, beyond a reasonable doubt, that Petitioner committed the underlying felony of robbery with a dangerous weapon—a necessary predicate to a finding of guilt on the felony murder charge. *See id.* As a result, Mr. Smith argues a violation of Due Process. *See id.*

The OCCA rejected this claim on the merits[1] and this Court should conclude that the OCCA's determination was reasonable.

### A.    Clearly Established Law

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Both direct and circumstantial evidence may be considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court— to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).
>
> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal

---

[1] (ECF No. 13-1:10-13).

court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* Under the AEDPA, this Court's review is limited to deciding whether the OCCA's decision that there was sufficient evidence to support the jury's finding of robbery with a dangerous weapon was contrary to or an unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238 (10th Cir. 2003). The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

### B. No Habeas Relief on Ground Two

To obtain a conviction for felony murder—robbery with a dangerous weapon, the State had to show: (1) the death of a human and (2) that the death occurred as a result of an act or event which happened in the defendant's commission of a robbery with a dangerous weapon. *See* OUJI-CR-4-64. To conclude that robbery with a dangerous weapon had occurred, the State had to show: (1) the wrongful, (2) taking, (3) and carrying away, (4) the personal property, (5) of another, (6) from the person of another, (7) by force/fear, (8) and through the use of a loaded firearm. *See id*; 21 O.S. § 801.

Mr. Smith argues that there is insufficient evidence to support the felony murder conviction because the State failed to prove the elements of robbery with a dangerous weapon. (ECF No. 1:28-33). Although the OCCA did not cite *Jackson,* it applied

the *Jackson* standard when considering petitioner's sufficiency of the evidence claim.[2]

*See* ECF No. 13-1:10-13 (applying but not citing *Jackson*, stating "Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt."). The OCCA stated:

> Our review of the evidence shows the prosecution sufficiently proved Holmes died as a result of [Petitioner's] actions during the commission of robbery with a dangerous weapon. Robbery with a dangerous weapon is the wrongful taking and carrying away of another's personal property by force or fear through the use of a loaded firearm. The evidence showed Torres introduced [Petitioner] to Holmes to conduct a drug sale. [Petitioner] told Torres before the upcoming drug deal that he wanted to rob Holmes, calling him a pejorative name. Torres left town because she was under the impression that [Petitioner] had decided to rob Holmes during the arranged drug deal. [Petitioner] was annoyed with Torres for leaving and told her over the phone, "you know I need this money." Fields testified that [Petitioner] was angry with Holmes and ordered him to strip and lie on the floor. [Petitioner] told Torres after the incident that he and Fields stripped and robbed Holmes and a passerby found Holmes's half-naked body in a creek. After the shooting, [Petitioner] fled in Holmes's car and later burned some of his belongings. He kept the money from Holmes's pocket. In his post-arrest interview, [Petitioner] referred to Holmes using the same pejorative name he used in his conversation with Torres and admitted killing Holmes and taking his property. The fact there was no evidence [Petitioner] uttered a demand for Holmes's property or announced an intent to rob him before fatally shooting him does not negate a finding that a robbery was in progress when [Petitioner] pointed a gun at him and ordered him to remove his shorts and lie on the ground. [Petitioner] had evidenced an intent to rob Holmes days before and a rational jury could conclude [Petitioner] was in the process of carrying out his intention when he shot Holmes. Based on

---

[2] "That the OCCA did not cite Jackson is of no moment; state courts need not refer to, or even be aware of, controlling Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.' "*Matthews v. Workman,* 577 F.3d 1175, 1183 n. 2 (10th Cir. 2009) (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)).

the record before us, we find a rational jury could find [Petitioner] killed Holmes during the commission of robbery with a dangerous weapon. This claim is denied.

(ECF No. 13-1:11-13). In light of the deferential standard under § 2254, the Court should conclude that the OCCA's determination was reasonable.

For example, the jury heard testimony from Detective Uptergrove that a few days prior to Mr. Holmes' death, Petitioner had told Ms. Torres that he had wanted to "rob that bitch ass nigga," referring to Mr. Holmes. (Trial TR. Vol. II 120). And on August 20, 2017, when Petitioner had arranged to meet Mr. Holmes in Ms. Torres' home, Detective Uptergrove testified that Ms. Torres told him that her understanding of the meeting was that Petitioner was going to rob Mr. Holmes. (Trial TR. Vol. II 121). And Petitioner's girlfriend at the time, Ryan Fields, testified that upon finding out that Ms. Torres was not home when she and Petitioner arrived at Mr. Torres' house, Mr. Smith "started flipping out on her, cussing her out,  . . . just telling 'you were supposed to be at the house. You know I need this money.' " Jury Trial Volume III, *State of Oklahoma v. Smith*, Case No. CF-2017-184 (Jackson Co. Dist. Ct. Jan. 30, 2019) 11 (Trial TR. Vol. III).

Ms. Fields also testified that after Mr. Holmes arrived at Ms. Torres' house, Mr. Smith confronted Mr. Holmes, asking him if he had been talking about Petitioner. *Id.* at 14-15. When Mr. Holmes denied Petitioner's accusations, Ms. Fields testified that "[Mr. Smith] already had his gun pulled on [Mr. Holmes] and . . . [then] told [Mr. Holmes] to take his pants off . . . [and] get on the ground." *Id.* at 15. Mr. Holmes complied, but when Petitioner turned away, Mr. Holmes tried to escape, and Petitioner shot Mr. Holmes

twice—in the leg and in the throat. *Id.* at 16-17. After the shooting, Petitioner took money off of Mr. Holmes' person, grabbed two bags, the couple left the residence, and Mr. Smith ordered Ms. Fields to take Mr. Holmes' vehicle to Lawton. *Id.* at 18-19, 34. Ms. Fields met up with Petitioner approximately two hours later and testified that Petitioner was in possession of "some Walmart bags" that he did not have prior to the shooting. *Id.* at 21. Ms. Fields testified that the bags contained "cleaning supplies, some paper towels, some different clothes, some gloves, [and] masks[.]" *Id.* at 22. And Detective Uptergrove testified that Ms. Torres had told him that Petitioner had told her that he and a female who was with him "stripped and robbed and bound [Mr.] Holmes" and "disposed of the body in a creek so that it would wash away." (Trial TR. Vol. II 122-123).

Mr. Smith himself testified that he shot Mr. Holmes in self-defense after Mr. Holmes tried to rob him, then went to Walmart for supplies, returned back to Ms. Torres' home, put Mr. Holmes' body in a sleeping bag, cleaned Ms. Torres' home, and then dumped Mr. Holmes' body in a creek. (Trial Tr. Vol. V 140-141, 143, 146-147).

The Court should conclude that this evidence, viewed in the light most favorable to the State, is sufficient to support the jury's finding that Mr. Smith had committed robbery with a dangerous weapon, the underlying felony predicate to his felony murder conviction. Accordingly, the Court should conclude that: (1) the OCCA's decision was not an unreasonable application of *Jackson* and (2) habeas relief is not warranted on Ground Two.

## V.    GROUND THREE

In Ground Three, Petitioner argues that the introduction of inadmissible hearsay violated his Sixth Amendment right of Confrontation and his Fourteenth Amendment right to Due Process. (ECF No. 1:33-38). The Court should deny habeas relief on Ground Three.

### A.    Background

At trial, the trial court admitted State's Exhibits 14 & 15—probable cause affidavits submitted by police to obtain a search warrant for the car driven by Petitioner the night he shot Mr. Holmes. *See* O.R., State's Exhibits 14 & 15. Contained in these exhibits are statements from Ms. Torres that Mr. Smith had: (1) confessed to murdering Mr. Holmes and (2) threatened her life if she told anyone. *See id.* At trial, during the testimony of Altus Police Detective Jonathan Almanza, the State sought to introduce the affidavits, but trial counsel objected, arguing that they contained non-admissible hearsay. (Trial TR. Vol. III 167-168, 175). The trial court overruled the objections, admitting the statements as co-conspirator non-hearsay under 12 O.S. § 2801(B)(2)(e). *Id.* at 170, 175.

### B.    Petitioner's Argument on Direct Appeal and the OCCA's Decision

On Direct Appeal, Mr. Smith argued that the admission of the alleged hearsay statements contained in State's Exhibits 14 & 15 violated the Sixth and Fourteenth Amendments. (ECF No. 13-3:34-39). According to Petitioner, the statements were wrongly admitted as co-conspirator non-hearsay because the statements were made the day after Mr. Smith killed Mr. Holmes, which was outside the scope of any conspiracy to distribute marijuana. *Id.*

The OCCA recognized the constitutional claims, reviewed the trial court's evidentiary ruling allowing the statements in as co-conspirator non-hearsay for an abuse of discretion, and reviewed the Sixth Amendment claim for plain error. (ECF No. 13-1:14). Ultimately, the OCCA concluded that error had indeed occurred, stating:

> We agree that these statements do not fall under co-conspirator non-hearsay. The conspiracy was to distribute drugs on August 20; it ended when Smith killed Holmes and disposed of his body. Because these statements were made the next day, they were not admissible under Section 2801(B)(2)(e) as the conspiracy's timespan was over. Nor were the statements admissible under another hearsay exception.

(ECF No. 13-1:15). As a result, the OCCA reviewed the errors for harmlessness under *Chapman v. California*, 386 U.S. 18, 24 (1967), and ultimately concluded that the errors were, indeed, harmless. In doing so, the Court stated:

> Our review of the record shows the evidence of [Petitioner's] guilt was convincing and strong. He never contested the fact that he fatally shot Holmes and disposed of his body. The contested issue at trial was whether he acted in self-defense or killed Holmes during the commission of either an armed robbery or drug deal. The fact he confessed to killing Holmes was repeated throughout the trial by various witnesses. Torres's statement about his admission of killing Holmes in the affidavits was duplicative of his own admissions, especially his statements overheard by Brenda Torres where he told Melisha Torres about killing Holmes and made no mention of self-defense. Nor do we find of much consequence his threat to Torres to secure her silence. The jury had before it the prosecution's properly admitted evidence depicting [Petitioner] as a violent drug dealer to weigh against his evidence and testimony that he panicked and did not contact police because of his belief his criminal record would preclude police from believing his self-defense claim. Considering the evidence as a whole, threatening a witness in the criminal culture he and Torres inhabited was not unduly prejudicial or outcome determinative. For these reasons, we conclude that the minds of an average jury would not have found the State's case significantly less persuasive had the search warrant affidavits containing the challenged hearsay been excluded. Our review of the record leaves us with no reasonable doubt that the jury would have reached a

different verdict without this evidence. We find any error in the admission of these hearsay statements did not contribute to the verdict in this case and was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). This claim is denied.

(ECF No. 13-1:17-18).

### C.    Petitioner's Habeas Challenge and the Court's Standard of Review

In Ground Three, Mr. Smith raises the arguments that he had raised in Proposition Three on Direct Appeal, nearly repeating the arguments verbatim—arguing that the trial court's admission of the statements from Ms. Torres that Petitioner had  confessed to murdering Mr. Holmes and had threatened her life if she told anyone violated the Sixth and Fourteenth Amendments. *See* ECF No. 1:33-38. According to Mr. Smith, the OCCA unreasonably applied *Chapman* in concluding that the error in admitting the statements from Ms. Torres was harmless. (ECF No. 1:34-35). The Court should disagree.

"When  a  state  court's *Chapman* decision  is  reviewed  by  a  federal  court under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself was unreasonable*.' " *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (emphasis  in  original). This AEDPA limitation  to *Chapman* is  subsumed  by the *Brecht* test  for  harmlessness,  which  is  used  by  courts  engaging  in  collateral review. *Id*. Under this test, a petitioner cannot gain relief for a trial court's error unless he can establish that the error "had [a] substantial and injurious effect or influence in determining  the  jury's  verdict." *Brecht v. Abrahamson*, 507  U.S.  619,  637,  (1993) (quotations  omitted). In  other  words,  the  petitioner  must  establish  actual

prejudice. *See id.* As a result, to prevail on Ground Three in this Court, Mr. Smith must "show that he was actually prejudiced by" the trial court's admission of the statements from Ms. Torres that were included in State's Exhibits 14 & 15, "a standard that he necessarily cannot satisfy if a fairminded jurist could agree with the [OCCA's] decision that [the error] . . . met the *Chapman* standard of harmlessness." *Davis*, 576 U.S. at 270.[3]

### D.   No Habeas Relief on Ground Three

Here, the OCCA adjudicated Petitioner's claim on the merits, finding that the error in admitting Ms. Torres' statements was harmless because "the evidence of Smith's guilt was strong." (ECF No. 13-1:17). Indeed, in light of the evidence at trial supporting the OCCA's conclusion, the Court should conclude that the OCCA's application of *Chapman* was reasonable.

For example, at trial, Mr. Smith himself admitted to killing Mr. Holmes and thereafter cleaning the crime scene and disposing of Mr. Holmes' body. (Trial TR. Vol. V 141-147). Although Mr. Smith stated that he acted in self-defense, that issue was not before the trial court, the only issue was the admissibility of Ms. Torres' statement that Petitioner had told her he had killed Mr. Holmes and threatened to kill her if she told anyone. And as discussed, Ms. Fields also testified that she witnessed Mr. Smith pull a gun on Mr. Holmes, order him to take his pants off and get on the ground, and shoot Mr.

---

[3] The Court may assume, without deciding, that federal constitutional errors occurred—both of the Due Process Clause and the Confrontation Clause. *See Davis v. Ayala*, 576 U.S. 257 (assessing harmless error after assuming but not deciding that a federal constitutional error occurred).

Holmes twice. *See* Trial TR. Vol. III 15. Finally, the Court heard testimony from Detective Uptergrove that Ms. Torres had told him that Petitioner had told her that he and a female who was with him "stripped and robbed and bound [Mr.] Holmes" and "disposed of the body in a creek so that it would wash away." (Trial TR. Vol. II 122-123).[4] Furthermore, Ms. Fields, who had witnessed the shooting and was Petitioner's accomplice in cleaning the crime scene,[5] testified that Petitioner had threatened to "shoot [her] and leave [her] in a motel room" because she "didn't move fast enough for [Petitioner] and get him ice [at the motel]." (Trial TR. Vol. III 45-46).

In light of Petitioner's own statement, admitting to the killing, and the properly admitted testimony from Ms. Fields and Detective Uptergrove, the Court should not find that the admission of Ms. Torres' statements "had [a] substantial and injurious effect or influence in determining the jury's verdict," requiring habeas relief under *Brecht*. Instead, based on the foregoing, the Court should conclude that the OCCA reasonably determined that based on the evidence presented at trial, any error in admitting the statements from Ms. Torres was harmless, thereby precluding habeas relief on Ground Three.

## VI.   GROUND FOUR

In Ground Four, Petitioner argues that the trial court erred in allowing irrelevant and improper opinion testimony from Detective Earls, resulting in a violation of Due

---

[4] As discussed, Detective Uptergrove's testimony was properly admitted as co-conspirator non-hearsay. *See supra*.

[5] *See* Trial TR. Vol. III 22-32.

Process. (ECF No. 1:38-40). According to Petitioner, during its case-in-chief, the Prosecutor asked a series of questions to Detective Earls regarding whether he believed, based on his experience and training as a police officer, that Petitioner's actions in burning evidence, cleaning the crime scene, and getting help from a friend in disposing of the body were consistent with behavior of an innocent man, to which he answered "no." *See* ECF No. 1:38; Trial TR. Vol. V 108-109, 113. Mr. Smith also argues that the Prosecutor improperly referenced Detective Earls' testimony during closing arguments. (ECF No. 1:38).

## A.  Petitioner's Direct Appeal, the OCCA's Decision, and this Court's Standard of Review

On Direct Appeal, Petitioner argued that the trial court's admission of Detective Earls' testimony deprived him of a fair trial, resulting in a denial of Due Process. (ECF No. 13-3:39-41). Mr. Smith clearly raised a constitutional claim on Direct Appeal, but the initial issue for this Court is whether the OCCA adjudicated it. In the Summary Opinion, the OCCA characterizes Mr. Smith's claim as alleging the "deni[al] [of] a fair trial by the admission of improper opinion evidence and closing argument referencing the improper opinion testimony." (ECF No. 13-1:19). Even so, the OCCA never cited to the Due Process Clause or any constitutional authority in adjudicating the claim. *See* ECF No. 13-1:19-23. Instead, the OCCA cited only state law in its analysis, ultimately concluding that Detective Earls had offered "lay opinion" testimony, which "amounted to a violation of the prohibition against opinions on a defendant's guilt." (ECF No. 13-1:22).

Recognizing the error, the OCCA went on to evaluate whether, in fact, the error was harmless. In doing so, the OCCA ultimately concluded that any error was harmless, citing *Simpson v. State*, 1994 OK CR 40, ¶ 37, 876 P.2d 690, 702, and stating "we have no grave doubts that admission of the challenged opinion evidence substantially influenced the verdict." (ECF No. 13-1:23). In *Simpson*, the OCCA explained that it holds a *nonconstitutional* error—i.e., an error of purely state law—to be harmless on direct review unless the error "had a 'substantial influence' on the outcome, or leaves the reviewing court in 'grave doubt' as to whether it had such an effect." *Simpson v. State,* 876 P.2d 690, 702 (Okla. Crim. App. 1994) (citing *Kotteakos v. United States,* 328 U.S. 750, 765 (1946), as the federal standard for showing error "in non-constitutional situations"); *accord O'Neal v. McAninch,* 513 U.S. 432, 437–38 (1995) (noting that the *Kotteakos* standard is applied in direct review of nonconstitutional trial error); *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990) (same).

Thus, although Mr. Smith clearly presented a constitutional claim on Direct Appeal, the OCCA did not adjudicate the same. Instead, as is clear through the OCCA's application of *Simpson* to asses harmlessness, that Court treated the claim as "nonconstitutional" and evaluated it only utilizing state law. Based on the OCCA's treatment of the claim, the Court should conclude that it failed to decide the merits of whether Detective Earls' testimony violated Due Process, rendering this claim subject to this Court's *de novo* review.

**B.      No Habeas Relief on Ground Four**

Habeas relief may lie for an error of state law that involves the erroneous admission of evidence, if the evidence "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)). In applying the fundamental-fairness analysis, the Court considers Detective Earls' testimony in light of the record as a whole. *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002).

As stated, the prosecutor asked Detective Earls a series of questions regarding whether he believed Mr. Smith's actions in burning evidence, cleaning the crime scene, and getting help from a friend in disposing of the body were consistent with behavior of an innocent man, to which he answered "no." (Trial TR. Vol. V 108-109, 113). Later, the prosecutor referred to this line of questioning in closing arguments. (Trial TR. Vol. V 288-289, 295, 308). After Detective Earls testified, Petitioner took the stand whereupon he was essentially asked the same questions as Detective Earls. The following exchanges occurred:

> PROSECUTOR: Do you think it helped justice by destroying evidence, putting a body in a creek to rot and be eaten by the fishes and running away? Did that help justice?
>
> MR. SMITH: No, sir, it didn't.
>
> . . .

PROSECUTOR: In fact, there's nothing consistent, Mr. Smith, with what you did after you killed Jared that's consistent with innocence, is there?

MR. SMITH:  Not on my part, no, sir.

. . .

PROSECUTOR: Then you go to Grandma's house and you burn up everything and put clothes on over your clothes to keep from dropping hairs and other forensic evidence on the body and the crime scene, didn't you?

MR. SMITH: I did that.

. . .

PROSECUTOR: (referring to prior question) You did it to prevent evidence from being left behind? Yes or no.

MR. SMITH: Yes, sir.

(Trial TR. Vol. V 179-180). Finally, when asked why he destroyed his car during the time he was on the run from authorities following the murder, Mr. Smith replied: "To evade authorities." (Trial TR. Vol. V 189).

In light of Petitioner's own testimony, which was essentially duplicative of testimony given by Detective Earls, coupled with the fact that the jury was instructed that it was their responsibility to determine the credibility of each witness,[6] the Court should conclude that the admission of Detective Earls' testimony did not render the trial fundamentally unfair and no violation of Due Process occurred. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (admission of testimony that witness had passed a polygraph test did not render the trial fundamentally unfair, in part, because the

---

[6] (O.R. 142).

testimony was corroborated by another witness). The Court should deny habeas relief on Ground Four.

## VII.   GROUND FIVE

In Ground Five, Petitioner argues that he was denied a fair trial in violation of the Due Process Clause because the trial court failed to identify Ms. Fields as Petitioner's accomplice, or otherwise instruct the jury accordingly. (ECF No. 1:40-43). The Court should find this claim procedurally barred.

### A.      Exhaustion as a Preliminary Consideration

The exhaustion doctrine, a matter of comity which has long been a part of habeas corpus jurisprudence, requires the court to consider in the first instance whether petitioner has presented his grounds for relief to the OCCA. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 1999) ("A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition."); *see also* 28 U.S.C. § 2254(b)(1)(A).

"Exhaustion requires that the claim be 'fairly presented' to the state court, which means that the petitioner has raised the 'substance' of the federal claim in state court." *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009) (citation omitted). This means "a federal habeas petitioner [must] provide the state courts with a 'fair

opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted).

### B.    Procedural Bar/Anticipatory Procedural Bar

Beyond the issue of exhaustion, the Court must also examine how the OCCA adjudicated each of a petitioner's grounds for relief, i.e., whether the OCCA addressed the merits of a petitioner's grounds or declined to consider them based on a state procedural rule. "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. at 729). "The doctrine applies to bar federal habeas [relief] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. at 729-30; *see also Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012) ("When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims procedurally barred and refuse to consider them."). "Anticipatory procedural bar occurs when the federal courts apply a procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (citation omitted).

**C.    Ground Five has not Been Exhausted and is Subject to an Anticipatory Procedural Bar**

The Court should conclude that the Ground Five is procedurally barred. As stated, in Ground Five, Petitioner alleges the trial court erred by failing identify Ms. Fields as Petitioner's accomplice, or otherwise instruct the jury regarding the same. (ECF No. 1:40-43). In doing so, Petitioner copied Proposition Five of the Direct Appeal nearly verbatim, with very slight alterations. For example, in both the Petition and the Direct Appeal Brief, Petitioner's heading is "Mr. Smith was Denied his Right to a Fair Trial Because the Court did not Identify Ryan Fields as an Accomplice or Instruct the Jury she was an Accomplice as a Matter of Law." (ECF Nos. 1:40 & 13-3:41). In the Direct Appeal Brief, however, Mr. Smith never once mentions the Fourteenth Amendment or the Due Process Clause, or gives any indication that he is asserting a constitutional claim. Instead, Petitioner's argument is solely based on state law, with references to only Oklahoma statutes and case law. *See* ECF No. 13-3: 41-43; *see* ECF No. 21:3, *Adair v. El Habti*, Case No. CIV-22-231-R (W.D. Okla. Mar. 30, 2023) ("the passing reference to denial of a "fair trial" is not sufficient to have given the Oklahoma Court of Criminal Appeals notice that Petitioner was asserting a federal constitutional claim."). In the habeas Petition, however, Mr. Smith adds a sentence in what appears to be an attempt to convert this claim to one of constitutional magnitude. Near the end of the argument, Mr. Smith cites a Tenth Circuit case and states: "The incomplete instruction denied Petitioner a due process right to a fair trial because a jury must be instructed to preclude the possibility that the conviction rests on an incorrect legal basis." (ECF No. 1:42).

On review, the OCCA did not view Proposition Five as a constitutional claim, reviewing the claim only under state law. *See supra*. Mr. Smith's failure to raise a constitutional claim on Direct Appeal is fatal to his attempt to do so in the habeas Petition. Because Ground Five has not been presented to the OCCA for adjudication, the Court should conclude that it is unexhausted. To exhaust this Ground Five, Petitioner would have to return to state court and present it in a post-conviction application. *See* 22 O.S. § 1086. However, if Petitioner did so, the OCCA would likely find that the claim was procedurally barred under a theory of waiver. *See* 22 O.S. § 1086 ("Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application[.]").

The Tenth Circuit Court of Appeals has recognized the OCCA's finding of waiver to be an "independent and adequate ground" barring habeas review. *See Thacker v. Workman*, 678 F.3d 820, 835 (10th Cir. 2012) (finding Oklahoma's doctrine of waiver to be independent and adequate). Under similar circumstances, the Tenth Circuit Court of Appeals has applied an anticipatory procedural bar to prevent habeas review. *See Grant v. Royal*, 886 F.3d 874, 893 (10th Cir. 2018) ("if Mr. Grant attempted to pursue this procedural competency claim in state court, that court would deem the claim procedurally barred under Oklahoma law because Mr. Grant could have raised it on direct appeal.").

As a result, Mr. Smith can only overcome the anticipatory procedural bar if he is able to demonstrate: (1) "cause and prejudice" for the default, or (2) that a fundamental

miscarriage of justice has occurred. *See Coleman v. Thompson*, 501 U.S. at 750. "Cause" under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him, with the result being prejudice to the petitioner. *Coleman v. Thompson*, 501 U.S. at 753. To demonstrate a fundamental miscarriage of justice, a petitioner must make a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). That is, he must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 1232 (citation omitted). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (citation omitted).

Here, Mr. Smith offers no "cause and prejudice" to excuse the default, nor does he make any argument that a fundamental miscarriage of justice had occurred. *See supra*; *see* ECF Nos. 1 & 18. As a result, the Court should find that Ground Five is procedurally barred from consideration on habeas review. *See Grant v. Royal*, 886 F. 3d at 902 ("Mr. Grant makes no effort to overcome this bar by arguing cause and prejudice, or a fundamental miscarriage of justice. Consequently, we hold that we are precluded from considering Mr. Grant's procedural due process competency claim.").

## VIII.  GROUND SIX

Petitioner contends that three instances of prosecutorial misconduct deprived him of a fair trial. (ECF No. 1:43-49). Specifically, he claims the prosecutor: (1) made demeaning and disparaging remarks about him during cross-examination and closing arguments; (2) elicited misleading and/or false testimony regarding Petitioner's co-conspirator, Ms. Torres; and (3) invoked societal alarm. (ECF No. 1:43-49).

Petitioner raised each of his prosecutorial misconduct claims in his Direct Appeal. (ECF No. 13-3:43-50). After noting a review for plain error, the OCCA concluded that a review of Petitioner's instances of alleged misconduct did not warrant relief. (ECF No. 13-1:27-31). The Court should conclude that the OCCA's decision was not contrary to, nor involved an unreasonable application of, Supreme Court precedent, and habeas relief is not warranted on Ground Six.[7]

### A.    Clearly Established Law

Prosecutorial misconduct can cause constitutional error in two ways. *Underwood v. Royal*, 894 F.3d 1154, 1167 (10th Cir. 2018). First, it can prejudice a specific constitutional right, amounting to a denial of the right. *Id.* Second, "absent infringement

---

[7] Although the OCCA did not cite Supreme Court precedent in its decision, it concluded that none of the challenged comments affected the outcome of the trial. *See* ECF No. 13-1:27-31. Because this standard correlates with *Donnelly*, *supra*, the OCCA's failure to explicitly cite Supreme Court precedent does not preclude deference under the AEDPA. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that it is not necessary that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law).

of a specific constitutional right, a prosecutor's misconduct may in some instances render a . . . trial 'so fundamentally unfair as to deny [a defendant] due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).[8] Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. *See Donnelly,* 416 U.S. at 643; *Fero v. Kerby,* 39 F.3d 1462, 1474 (10th Cir. 1994). Any cautionary steps—such as instructions to the jury—offered by the court to counteract improper remarks may also be considered. *See Darden v. Wainwright,* 477 U.S. 168, 182 (1986). The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct. *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).

Under the AEDPA, Mr. Smith also must show the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quotations omitted).

## B.    Habeas Relief is not Warranted on Ground Six

The Court should conclude that none of the alleged instances of prosecutorial misconduct rendered Petitioner's trial fundamentally unfair and the OCCA was reasonable in concluding the same. As a result, habeas relief is not warranted on Ground Six.

---

[8] In support of his prosecutorial misconduct claims, Mr. Smith cites the Fifth and Fourteenth Amendments. *See supra*. These Amendments involve Petitioner's right to Due Process of law. As a result, the Court should examine Mr. Smith's claims for fundamental fairness.

### 1.    Demeaning and Disparaging Comments

Mr. Smith argues that the prosecutor "repeatedly badgered, belittled, and ridiculed Petitioner" during cross-examination and during closing arguments. (ECF No. 1:44-45). In support of the allegations concerning comments made during cross-examination, Petitioner complains that the prosecutor called him a liar regarding a prior conviction. (ECF No. 1:44).[9] On direct examination, Petitioner had presented his personal story involving life with a gang, and all of the related repercussions—i.e.—felony convictions and selling drugs—as background for his explanation that after shooting Holmes, he panicked, fearing police would not believe he had acted in self-defense because of his gang affiliation and prior record. *See* Trial Tr. Vol. V 124-128. As a result, the prosecutor was entitled to question Mr. Smith regarding his prior felony convictions; during which the prosecutor insinuated that Petitioner had lied to the jury regarding whether he had pled guilty to a charge of kidnapping. *See* ECF No. 1:44; Trial TR. Vol. V 170-171. The OCCA concluded the same, stating "Because the record shows that the prosecutor challenged Smith's truthfulness and credibility based on his narrative on direct, we find that Smith has not shown that the prosecutor's questions or corresponding closing

---

[9] Mr. Smith also stated that "DA Thomas's ridicule of Petitioner did not go unnoticed by courtroom observers" and that "Twice, trial counsel objected because DA Thomas was 'getting in my client's face.'" (ECF No. 1:44). But these allegations do not concern a specific instance of prosecutorial misconduct. Additionally, Petitioner gives five page citations to the trial transcript, referring to the prosecutor's "badgering" of Petitioner, but provides no specific instances of prosecutorial misconduct. Based on Petitioner's reference to page 170 and Mr. Smith's reliance on case law regarding the impropriety of a prosecutor's commenting on the credibility of a witness, the undersigned finds only one instance which could arguably be considered a claim of prosecutorial misconduct—the instance where the Prosecutor and Mr. Smith were arguing about whether he had admitted to pleading guilty on a kidnapping charge.

argument was error, plain or otherwise." (ECF No. 13-1:29). The Court should conclude

that the OCCA's decision was not contrary to, nor involved an unreasonable application

of Supreme Court precedent. *See Turner v. Roberts*, 234 F. App'x 867, 871, 2007 WL

1454423, at *4 (10th Cir. 2007) (Because petitioner's counsel "opened the door" for the

state to pursue certain information regarding petitioner's past, including his gang lifestyle

and prior domestic violence incidents, cross-examination relating to the same did not

constitute prosecutorial misconduct resulting in a fundamentally unfair trial).

During closing argument, Petitioner claims that the prosecutor demeaned him by:

- suggesting he believed Petitioner was a liar and guilty;

- apologizing to all young Black men in the courtroom for any implication that they might be like Petitioner;

- telling the jury that the only word Petitioner had in his vocabulary was "M-Fer"; and

- stating that Petitioner was a "walking wrongful act selling lies and selling death."

(ECF No. 1:44-45). The OCCA rejected this claim, stating:

> We note the district court correctly instructed the jury at the outset of trial that no statement or argument of counsel was evidence and the court reminded the jury of that admonition during closing argument.

(ECF No. 13-2:29).

The Tenth Circuit Court of Appeals has repeatedly recognized that "considerable

latitude is given [to] the prosecutor in closing argument in replying to an argument raised

by defense counsel's closing statement." *United States v. Currie*, 911 F.3d 1047, 1056

(10th Cir. 2018) (citation omitted); *United States v. Janus Indus.*, 48 F.3d 1548, 1558

(10th Cir. 1995); *see United States v. Robinson*, 485 U.S. 25, 31 (1988). And courts "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning." *Donnelly*, 416 U.S. at 647.

Here, the challenged statements did not render the trial fundamentally unfair for two reasons. First, the jury had heard testimony, from Mr. Smith himself, regarding the murder of Mr. Holmes. Second, the jury was instructed that they were to only consider the evidence when reaching the verdict, which would not include closing arguments. (O.R. 123). Accordingly, the OCCA reasonably concluded that the prosecutor's comments during closing argument did not render the trial fundamentally unfair. *See Malicoat v. Mullin*, 426 F.3d 1241, 1258 (10th Cir. 2005) (holding that prosecutorial misconduct did not warrant reversal because the court instructed the jury to decide the case based only on the evidence presented).

### 2.    False Testimony

As discussed, as part of its case in chief, Detective Uptergrove testified on behalf of the State regarding his interview with Ms. Torres where she allegedly told him that Petitioner was going to rob Mr. Holmes. *See supra*. This testimony came in the form of two primary statements. First, Detective Uptergrove testified that Ms. Torres had stated that on August 17, 2017, she had met Mr. Smith at a bar whereupon he told her that he wanted to "rob that bitch ass nigga"—referring to Mr. Holmes. (Trial TR. Vol. II 120). Second, Detective Uptergrove testified that Ms. Torres had spoken to Mr. Smith on the

phone on August 20, 2017—the day of the murder—and Mr. Smith again reiterated his intent to rob Mr. Holmes. (Trial TR. Vol. II 121).

In Ground Six, Mr. Smith alleges that the prosecutor's solicitation of the testimony concerning Ms. Torres' alleged phone conversation with Petitioner on August 20, 2017 constituted prosecutorial misconduct because: (1) the testimony was considered improper third-party hearsay and (2) was "misleading and/or false," because it was the "only" evidence that the prosecutor relied on to support the conviction. (ECF No. 1:45-48). The OCCA disagreed, stating:

> The district court properly admitted as co-conspirator non-hearsay Torres' statement that Smith told her days before the drug deal that he wanted to rob Holmes. Fields testified that Smith kept Holmes' money after the incident and Smith admitted during an interview that he shot Holmes and took Holmes's property. He said he shot Holmes during an armed robbery, claiming Holmes was robbing him and he acted in self-defense. Smith's stated intention days before Holmes's death coupled with testimony that he took Holmes's money and property amply supported a findings, without the challenged testimony, that Smith killed Holmes during an armed robbery. Admission of the challenged evidence was not outcome determinative and no relief is required.

(ECF No. 13-1:30). The Court should conclude that the OCCA's determination was reasonable.

As discussed, the trial court properly admitted Detective Uptergrove's testimony regarding his interview with Ms. Torres where she told him that days before the murder, Mr. Smith informed her of his intention to rob Mr. Holmes. *See supra*, Ground One. And, as discussed, Ms. Fields testified that Mr. Smith shot Mr. Holmes and took money off of his person and Mr. Smith himself testified to shooting Mr. Holmes during an armed

robbery. *See supra*, Ground Two. As found by the OCCA, even without the challenged evidence regarding the alleged phone calls between Ms. Torres and Mr. Smith, substantial evidence existed regarding the robbery; undermining Petitioner's claim of prosecutorial misconduct. As a result, the Court should find that the OCCA's decision was not contrary to, nor involved an unreasonable application of, Supreme Court precedent, and habeas relief is not warranted. *See Thornburg v. Mullin*, 422 F.3d 1113, 1138 (10th Cir. 2005) (no prosecutorial misconduct in light of the strength of the evidence of petitioner's guilt).

### C.     Societal Alarm

Mr. Smith alleges prosecutorial misconduct by arguing that the prosecutor improperly evoked "societal alarm" by stating that a verdict in Mr. Smith's favor "would allow every drug dealer to kill, destroy evidence, run from the law, and then come in here and say, 'self-defense.' " (ECF No. 1:48-49); *see* Trial TR. Vol. V 295-296. The OCCA rejected this claim on the merits, stating that although the statement may have "crossed the line" it did not render the trial fundamentally unfair. (ECF No. 13-1:31). The Court should agree in light of the overwhelming evidence of Petitioner's guilt, including testimony from Mr. Smith himself; Ms. Fields, his girlfriend-accomplice; and Ms. Torres, a co-conspirator. *See supra*; *see supra*, *Thornburg v. Mullin*, 422 F.3d at 1138. The Court should conclude that habeas relief is not warranted on this ground.

## IX.    GROUND SEVEN

In Ground Seven, Petitioner alleges that he was denied his Sixth and Fourteenth Amendment rights at trial due to the seating of a biased juror. (ECF No. 1:49-51).

Specifically, Mr. Smith alleges that a juror, S.M., was biased against him because she had worked as a law enforcement officer with the Altus Police Department for over 21 years. (ECF No. 1:49-51). Mr. Smith raised this issue on Direct Appeal and, reviewing for plain error, the OCCA denied the claim on the merits, finding that "[b]ecause S.M. consistently maintained that she could be fair and impartial, we find that Smith as failed to establish error, plain or otherwise." (ECF No. 13-1:34-35).[10] As a result, the undersigned finds that the OCCA adjudicated Ground Seven on the merits, and the claim is subject to a deferential review under the AEDPA.

### A. Clearly Established Federal Law

Under the Sixth Amendment to the Constitution, a defendant has a right to trial by an impartial jury. "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.' " *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). The proper standard for determining when a prospective juror should be excused for cause is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 420 (1985) (quoting *Adams v. Texas*, 448 U.S.

---

[10] Although the OCCA did not acknowledge the constitutional aspect of Petitioner's claim, as discussed, when the OCCA rejected Petitioner's claim under the plain-error standard, the decision "effectively disallowed the possibility of a due process violation." *Hancock v. Trammell*, 798 F.3d at 1011. And because the OCCA's reliance on S.M.'s impartiality is consistent with the Sixth Amendment's guarantee of an impartial jury, the OCCA's failure to cite the Sixth Amendment is of no import regarding deference owed under the AEDPA. *See supra*, *Early v. Packer*, 537 U.S. 3.

38, 45 (1980)). When determining the impartiality of a jury, it is not required that a

"juror[ ] be totally ignorant of the facts and issues involved." *Irwin v. Dowd*, 366 U.S.

717, 722 (1961).

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.*

*Id.* at 722-23 (emphasis added). Moreover, the analysis for a "claim that [a] jury was not

impartial . . . must focus . . . on the jurors who ultimately sat." *Ross v. Oklahoma*, 487

U.S. 27, 86 (1988). When analyzing a trial court's determination of a juror's bias, the

question is one of fact. *Witt*, 469 U.S. at 429 ("The trial judge is of course applying some

kind of legal standard to what he sees and hears, but his predominant function in

determining juror bias involves credibility findings whose basis cannot be easily discerned

from an appellate record. These are the "factual issues" that are subject to § 2254(d).").

In a § 2254 habeas proceeding, "a determination of a factual issue made by a State court

shall be presumed correct," and "[t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Thus, the question is whether there is fair support in the record for the state courts'

conclusion that the jurors here would be impartial." *Patton v. Yount*, 467 U.S. 1025, 1038

(1984); *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1224 (10th Cir. 2002) ("A trial judge's

determination of a potential juror's bias under this standard is a factual finding entitled to a presumption of correctness." (quoting *Moore v. Gibson*, 195 F.3d 1152, 1168 (10th Cir. 1999)).

**B.    No Habeas Relief on Ground Seven**

As stated, the issue is whether Mr. Smith was deprived of a fair and impartial jury because S.M. sat on the jury and she was formerly employed as a law enforcement officer with the Altus Police Department. *See supra*. To answer this question, the Court must examine the record to determine whether there is evidence in the record which would demonstrate S.M.'s impartiality. *See supra*. Here, the OCCA stated: "Because S.M. consistently maintained that she could be fair and impartial, we find Smith has failed to establish error, plain or otherwise." (ECF No. 13-1:35). Indeed, the record supports the OCCA's conclusion. During *voir dire*, the following exchange occurred:

> PROSECUTOR: [Juror S.M.], earlier you raised your hand, I believe, when the Court asked if any of you have had experiences which might prohibit you from being fair and impartial in this case?
>
> JUROR S.M.: Well, as a law enforcement officer for 21 years I've worked with these people, the officers that are listed—
>
> PROSECUTOR: Right.
>
> JUROR S.M.: --in this case. I worked with them. And it's not that I can't be fair and impartial, but I trust them. I trust their investigative skills. I worked with them for a long time. And if the evidence is there to say that, you know, this crime was committed, then I'm going to be likely to go with what my coworkers and fellow police officers say.

PROSECUTOR: Okay. But could [you] be fair and impartial?

JUROR S.M.: I could be fair and impartial, yes.

(Trial Tr. Vol. I 86).

Subsequently, the State again confirmed with Juror S.M. that she could be fair and

impartial:

PROSECUTOR: [Juror S.M.]

JUROR S.M.: Yes?

PROSECUTOR: [I've] [g]one over most of these things with you. So, let me ask you, your law enforcement experience, your husband having been in law enforcement, knowledge of the witnesses, some [of] them, law enforcement witnesses, do you believe you can be fair and impartial in this case?

JUROR S.M.: Yes. I do.

PROSECUTOR: Okay. Is there anything known only to you, that I've not asked you, that you believe we should know that might be important with respect to this case?

JUROR S.M.: No.

(Trial Tr. Vol. I 250-251). The record indicates that S.M. stated that she could be an

impartial and unbiased juror, despite her previous employment in law enforcement.

Petitioner has not presented any additional evidence which would rebut the presumption

of correctness owed to the OCCA's determination that Mr. Smith was unable to establish

a violation of Due Process owing to bias from S.M. *See* ECF No. 1. The Court should deny

habeas relief on Ground Seven.

**X.      GROUND EIGHT**

In Ground Eight, Petitioner alleges that her trial counsel was ineffective for failing

to:

- cite to case law at the in-camera hearing in support of his objection to Ms. Torres' testimony as co-conspirator, non-hearsay;

- object to Detective Earls' testimony regarding Petitioner's actions following the murder, as concerning the ultimate issue of guilt;

- request an accomplice instruction pertaining to Ryan Fields;

- object to alleged prosecutorial misconduct;

- challenge the seating of a retired law enforcement officer on the jury due to bias; and

- use transcripts of Detective Uptergrove's recorded interviews with Ms. Torres to impeach Detective Uptergrove regarding his testimony that Ms. Torres had told him that Petitioner had told her that he (Petitioner) was going to rob Mr. Holmes.

(ECF No. 1:51-57).

Mr. Smith presented these claims to the OCCA on direct appeal. *See* ECF No. 13-

3:58-65. The OCCA rejected the claims on the merits, utilizing the appropriate standard

under *Strickland v. Washington*.[11] (ECF No. 13-1:36-39). The Court should defer to the

OCCA's decision and conclude that it is neither contrary to, nor an unreasonable

application of, Supreme Court precedent.

---

[11] *See infra*.

### A.   Clearly Established Law

The Supreme Court established the ineffective assistance of counsel standard in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant is entitled to relief if: (1) counsel's performance was deficient, and (2) the defendant was thereby prejudiced. *Id.* at 687-88. "These two prongs may be addressed in any order, and failure to satisfy either is 'dispositive.' " *Littlejohn v. Trammell*, 704 F.3d 817, 859 (2013). "[R]easonableness" is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Prejudice "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Specifically, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams* v. Taylor, 529 U.S. 362, 391 (2000) (quoting *Strickland*, 466 U.S. at 694). Notably, a court reviews an ineffective assistance of counsel claim from the perspective of counsel at the time he or she rendered the legal services, not in hindsight. *See id.* at 680.

"Surmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [as] [t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly

so." *Id.* (internal quotations marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*; *see Sumpter v. Kansas*, 61 F.4th 729, 745 (10th Cir. 2023) ("Under § 2254(d)(1), a federal court must limit its review to determining "whether the state court's application of the *Strickland* standard was unreasonable."). In evaluating a state court's application of Strickland, "[a]ny state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence." *Sumpter v. Kansas*, 61 F.4th at 750.

## B.   No Habeas Relief on Ground Eight

The Court should find that Petitioner is not entitled to habeas relief on Ground Eight.

### 1.   Trial Counsel's Failure to Cite Case Law in Support of his Objection to Ms. Torres' Testimony as Co-conspirator, Non-Hearsay at the In-Camera Hearing

In Ground One, Petitioner argued that the admission of hearsay in the form of testimony from law enforcement officials regarding statements from Ms. Torres violated his Sixth and Fourteenth Amendment rights. *See supra*. In Ground Eight, Mr. Smith argues that trial counsel rendered ineffective assistance for failing to "provide[] [a] specific argument or cite[] any authority" at the in-camera hearing when objecting to the introduction of Ms. Torres' testimony. (ECF No. 1:52). According to Mr. Smith, "[w]hen a basis for objecting exists and counsel fails to use available precedent to support an

objection, if the error goes to the heart of the case, that failure cannot be considered strategy." (ECF No. 1:52).

The OCCA considered the claim and rejected it, finding no prejudice under *Strickland*. (ECF No. 13-1:37). Although Petitioner argues that counsel rendered deficient performance by failing to cite authority regarding Ms. Torres' alleged hearsay testimony, Mr. Smith has failed to tell this Court what authority trial counsel failed to cite and how it might have affected the trial court's ruling. Without such information, this Court should conclude that the OCCA's determination was not contrary to, nor involved an unreasonable application of, Supreme Court precedent. *See Figueroa–Jacinto v. United States*, No. 2:16-CV-722 TS, 2017 WL 27939, at *2 (D. Utah, Jan. 3, 2017) (no ineffective assistance of counsel when "Petitioner points to no prejudice as a result of counsel's alleged failure to [act]."

### 2. Trial Counsel's Failure to Object to Detective Earls' Testimony on the Ultimate Issue of Guilt

Petitioner argues that trial counsel rendered ineffective assistance by failing to object to Detective Earls' testimony concerning Petitioner's actions following the murder, which he argues was improper testimony on the issue of guilt. (ECF No. 1:53). The OCCA considered the ineffectiveness claim on the merits, finding no prejudice under *Strickland*. (ECF No. 13-1:37).

Previously, the undersigned concluded that that the admission of Detective Earls' testimony did not render the trial fundamentally unfair and no violation of Due Process

occurred. *See supra*.[12] Because no underlying error existed regarding the substantive claim, no prejudice ensued from counsel's failure to object to Detective Earls' testimony. *See Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) (denying petitioner's claim of ineffective of counsel which was premised on a failure to object when the underlying claim was without merit). Thus, the Court should conclude that the OCCA's determination was a proper application of *Strickland*, and as such, Petitioner is not entitled to habeas relief. *See United States v. Batton*, 527 F. App'x 686, 689 (10th Cir. 2013) (no ineffective assistance of counsel for counsel's failure to object to a misstatement of facts in the absence of evidence that the misstatement itself constituted misconduct or influenced the jury's verdict); *Maynard v. Allbaugh*, No. 14-CV-266-GKF-FHM, 2017 WL 1395496, at *8 (N.D. Okla. Apr. 17, 2017) (denying habeas relief based on petitioner's allegations that trial counsel failed to object to allegedly improper comments, finding, "[b]ecause the statements were not improper, Petitioner cannot show that counsel's failure to object to the statements constituted deficient performance.").

### 3. Trial Counsel's Failure to Request an Accomplice Instruction

In Ground Eight, Petitioner alleges his trial counsel was ineffective for failing to request an accomplice instruction pertaining to Ryan Fields. (ECF No. 1:53-54). The OCCA adjudicated this claim on the merits, applying *Strickland* and finding that Mr. Smith was

---

[12] The undersigned evaluated the underlying claim *de novo*, as the OCCA treated the claim as only arising under state law. *See supra*. However, that finding would not alter the standard of review of the ineffectiveness claim, for which the OCCA properly applied *Strickland*.

not prejudiced by trial counsel's omission in this regard. (ECF No. 13-1:24-27). The Court should conclude that the OCCA's determination was not contrary to, nor involved an unreasonable application of *Strickland*.

As discussed, Ryan Fields, Petitioner's girlfriend at the time of the murder, was present when Mr. Smith shot Mr. Holmes and was privy to the aftermath, helping Mr. Smith clean the crime scene and dispose of a vehicle. *See supra*. At trial, Ms. Fields recanted her former statement regarding Petitioner's having acted in self-defense, and instead testified that actually, Mr. Holmes did not have a weapon and did not threaten Petitioner. (Trial TR. Vol. III 15-16). However, according to Petitioner, because Ms. Fields was his accomplice and "was the only witness to contradict Petitioner's self-defense story," her testimony required corroboration and trial counsel was ineffective for failing to request a jury instruction in this regard. (ECF No. 1:53-54).

In Oklahoma, a "witness is an accomplice to the crime at trial if the witness could be charged with the same offense. Under 21 O.S. [2011], § 172, all persons who directly commit the act constituting the offense or aid and abet in its commission, even if not present, are principals and can be charged as an accomplice and held criminally liable." *Postelle v. State*, 267 P.3d 114, 126-127 (Okla. Crim. App. 2011) (internal citation and footnote omitted). When an accomplice testifies, an Oklahoma trial court is required to instruct the jury that corroborating evidence is necessary to sustain a conviction. Okla. Stat. tit. 22, § 742 ("A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the

defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.").[13]

In concluding that Petitioner's counsel was not ineffective in failing to request an accomplice instruction, the OCCA found that although Ms. Fields was an accomplice and an instruction was warranted, any error in this regard was harmless because Ms. Fields' testimony was corroborated by Mr. Smith's own admissions and attempts to conceal the crime. (ECF No. 13-1:26). Ultimately, the Court found that "[Ms.] Fields' testimony was sufficiently corroborated and the jury was free to credit her testimony refuting Smith's claim of self-defense." (ECF No. 13-1:3).

In his Petition, Mr. Smith does not attempt to rebut the State Court's factual findings in this regard, and thus, they are entitled to a presumption of correctness. *See* ECF No. 1; 28 U.S.C. § 2254(e)(1). With these findings of corroboration, Mr. Smith is unable to demonstrate that an accomplice instruction would have resulted in a different outcome. As a result, the Court should conclude that the OCCA correctly and reasonably applied *Strickland* to the law and the facts of this case and habeas relief is not warranted on this claim. *See Bautista v. Crow*, No. 19-CV-169-RAW-KEW, 2022 WL 4448905, at *9 (E.D. Okla. Sept. 20, 2022) (finding no habeas relief on petitioner's claim that trial counsel was ineffective for failing to request an accomplice instruction in light of findings that

---

[13] Despite the state requirement, Petitioner has identified no Supreme Court decision establishing a constitutional requirement that an accomplice's testimony be corroborated. Moreover, the Tenth Circuit has firmly ruled that there is no such requirement. *See Cummings v. Sirmons,* 506 F.3d 1211, 1237 (10th Cir. 2007); *Foster v. Ward,* 182 F.3d 1177, 1193 (10th Cir. 1999).

accomplice testimony had been corroborated and the OCCA had deemed the lack of error harmless).

### 4.    Trial Counsel's Failure to Object to Prosecutorial Misconduct

In Ground Six, Petitioner argued several instances of prosecutorial misconduct. *See supra*. In Ground Eight, Mr. Smith argues that his trial attorney was ineffective for failing to object to those instances of prosecutorial misconduct. (ECF No. 1:54). Applying *Strickland*, the OCCA rejected this claim on the merits, finding that "[Mr.] Smith cannot show that but for counsel's actions, the result of his trial would have been different." (ECF No. 13-1:37).

Previously, the undersigned concluded that the allegations of prosecutorial misconduct did not render the trial fundamentally unfair. *See supra*. Because no underlying error existed regarding the substantive claim, no prejudice ensued from counsel's failure to object to the alleged prosecutorial misconduct. *See supra, Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) (denying petitioner's claim of ineffective of counsel which was premised on a failure to object when the underlying claim was without merit). Thus, the Court should conclude that the OCCA's determination was a proper application of *Strickland*, and as such, Petitioner is not entitled to habeas relief.

### 5.    Trial Counsel's Failure to Challenge the Seating of a Biased Juror

In Ground Seven, Petitioner argued that his trial was rendered fundamentally unfair because he believed that a member of the jury, S.M., was biased against him based

on her previous employment with law enforcement. *See supra*. In Ground Eight, Mr. Smith argues that his trial counsel rendered ineffective assistance by failing to object to S.M. being on the jury, or otherwise use a peremptory challenge to excuse her for "cause." (ECF No. 1:54-55). Applying *Strickland*, the OCCA rejected this claim on the merits, finding that "[Mr.] Smith cannot show that but for counsel's actions, the result of his trial would have been different." (ECF No. 13-1:37).

Previously, the undersigned concluded that that the seating of S.M. did not render Mr. Smith's trial fundamentally unfair based on evidence which demonstrated S.M.'s impartiality. *See supra*. Because no underlying error existed regarding the substantive claim, no prejudice ensued from counsel's failure to object to S.M. being seated on the jury or otherwise exercise a peremptory challenges to excuse her for "cause." *See supra, Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) (denying petitioner's claim of ineffective of counsel which was premised on a failure to object when the underlying claim was without merit). Thus, the Court should conclude that the OCCA's determination was a proper application of *Strickland*, and as such, Petitioner is not entitled to habeas relief.

### 6. Trial Counsel's Failure to Use Additional Evidence to Support the Defense

At trial, on cross-examination, defense counsel asked Detective Uptergrove about a line of questioning he had pursued with Ms. Torres during a police interview on September 11, 2017, regarding whether she and Mr. Holmes had set up the "drug deal" in order to rob Mr. Smith. (Trial TR. Vol. II 131-133). The detective admitted recalling

that portion of the interview, and then trial counsel asked him, how, based on that line of questioning to Ms. Torres, the detective had ended up changing his viewpoint to believing that it was Ms. Torres and Mr. Smith who had set up Mr. Holmes. *Id.* at 133. In response, Detective Uptergrove stated that the theory of Ms. Torres and Mr. Holmes conspiring against Petitioner "was not what we ended up learning. That was just a preliminary part of the investigation[;] . . . an interrogation technique." *Id.* at 133-134.

In Ground Eight, Petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to use additional evidence from the September 11th interview to impeach Detective Uptergrove. (ECF No. 1:54-57). Specifically, Mr. Smith argues that in the interview, Ms. Torres had admitted to Detective Uptergrove that she owed Petitioner money. (ECF No. 1:56). According to Mr. Smith, his trial attorney was ineffective for failing to question the detective about this information, and "[h]ad he done so, the jury would have known that Petitioner was telling the truth when he testified that Ms. Torres owed him money and supported his claim that he was in Altus on August 20, 2017, to collect they money Ms. Torres owed him and that Ms. Torres and Mr. Holmes set him up." (ECF No. 1:56). On direct appeal, and with respect to this claim, Petitioner sought an evidentiary hearing to supplement the record with the transcripts from the September 11th interview. (ECF No. 13-1:37).[14] The OCCA rejected the claim and the evidentiary hearing, stating:

> Smith also claims defense counsel was ineffective for failing to

---

[14] In the habeas Petition, Mr. Smith neither challenges the OCCA's denial of an evidentiary hearing, nor requests a hearing in this Court. *See* ECF No. 1.

impeach Detective Uptergrove with transcripts form his interview with Torres to show Torres admitted during the interview that she owed Smith money for drugs. According to Smith, had defense counsel done do, the jury would have known he was telling the truth when he testified that he was in Altus to collect money Torres owed him. He asserts Torres's alleged debt supported his theory that Torres and Holmes set him up to be robbed rather than vice versa.

. . .

The record shows that defense counsel possessed the transcripts of Torres's interviews with police. Defense counsel questioned Detective Uptergrove about statements made during those interviews, including the detective's questions exploring the theory that it was actually Torres and Holmes who set up Smith to be robbed as Smith claimed. Defense counsel challenged Torres's credibility and elicited from the detective that the evidence supported a finding that Torres either set up Holmes or Smith. Defense counsel likely did not ask about Torres's debt because Smith had told police in his interview that he went to Altus on August 20th to sell Holmes half a pound of marijuana.

. . .

[W]e find that [Mr. Smith] has failed to meet his burden as he has not shown a strong possibility  that defense counsel was ineffective for failing to use the transcripts to impeach the detective's testimony about Torres's debt.

(ECF No. 13-1:37-39). Based on the record, the Court should conclude that the OCCA's decision as neither contrary to, nor an unreasonable application of, Supreme Court precedent.

For example, as stated by the OCCA, trial counsel did explore the possibility that Ms. Torres and Mr. Holmes had set up Mr. Smith. Defense counsel posed the following questions to Detective Uptergrove:

DEFENSE COUNSEL (to Detective Uptergrove): So on September 11th of 2017, after you've already interviewed Melisha Torres on - - or, right, and

smoking with her, prior to that, now you come back and you're saying, basically, that they [Ms. Torres and Mr. Holmes] set up my client, Marielle Smith; correct?

. . .

DEFENSE COUNSEL (to Detective Uptergrove): Melisha Torres either set Marielle Smith up or she set Jared Holmes up correct?

(Trial TR. Vol. II 133, 137).

Furthermore, on direct examination, Petitioner testified that he was going to Altus because "Melisha Torres had called me and was telling me that she had all my money[.]" (Trial TR. Vol. V 135). Thus, the jury was made privy to Petitioner's theory about why he was in Altus (to collect a debt) even though trial counsel did not impeach Detective Uptergrove regarding this point. As a result, the Court should conclude that: (1) defense counsel was not ineffective for failing to specifically ask Detective Uptergrove regarding this particular defense theory and (2) the OCCA reasonably applied *Strickland* to reject this claim.

In sum, the Court should conclude that the OCCA's decision on the various ineffective assistance of counsel claims was not contrary to, nor involved an unreasonable application of, Supreme Court precedent and habeas relief is not warranted on Ground Eight.

## XI.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based upon the foregoing analysis, it is recommended that the Petition be **DENIED**.

Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **August 14, 2023**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XII.   STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on July 27, 2023.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE